**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| JEANNE McCLOSKEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-CV-12846-AK |
| | ) | |
| PREDICTIVEGENIES, INC. d/b/a | ) | |
| HIRING CUBED, PREDICTIVEHR, INC, | ) | |
| TECHGENIES LLC, HEXA VENTURES | ) | |
| LLC, and JAMES TROIANO, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**ANGEL KELLEY, D.J.**

Plaintiff Jeanne McCloskey ("McCloskey") brings this action against the Defendants after they terminated her employment. Defendants TechGenies LLC ("TechGenies") and Hexa Ventures LLC ("Hexa") (collectively "the Defendants") move to dismiss the case against them for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). [Dkt. 8]. The remaining defendants, PredictiveGenies, Inc. d/b/a Hiring Cubed ("Hiring Cubed"), PredictiveHR, Inc. ("PHR"), and James Troiano ("Troiano"), are not parties to the motion. Plaintiff opposes this motion and cross-moves for leave to take jurisdictional discovery. [Dkt. 13]. For the following reasons, TechGenies and Hexa's Motion to Dismiss is **DENIED** and Plaintiff's Cross-motion for jurisdictional discovery is **DENIED as moot**.

## I.   BACKGROUND

The facts of this case are based on the allegations in the Complaint, which the Court must accept as true for the purpose of resolving Defendants' Motion to Dismiss.  This action arises out of McCloskey's employment from January 2023 to March 2024.  McCloskey was first employed by PHR in 2018 as Vice President of Recruitment Services.  In January 2023, Troiano, co-founder and CEO of PHR, approached McCloskey with a proposal that she head a new company, Hiring Cubed,[1] that would specialize in recruitment consulting.  From when it was first proposed, McCloskey understood Hiring Cubed to be in a joint venture with PHR and the other two corporate defendants in this case—TechGenies (led by CEO Ahmad Al-Amine) and Hexa (led by Chairman Maan Hamden).  McCloskey began working for Hiring Cubed on January 1, 2024, but her employment was far shorter lived than anticipated.  She was terminated on April 2, 2024.  [Dkt. 1 at 13].

McCloskey filed the instant suit in Massachusetts state court alleging several violations of Massachusetts state laws and a violation of Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub. L. No. 99-272, tit. X, § 10001 *et seq*., 100 Stat. 82, 222-237 (1986) (codified as amended 29 U.S.C. §§ 1161-1169).  On November 15, 2024, the Defendants removed the case to this Court.  TechGenies and Hexa now contend that the Court cannot exercise personal jurisdiction over them because they are limited liability companies incorporated in Texas, headquartered in Texas, and are without sufficient contacts in Massachusetts.  McCloskey claims that the companies have sufficient contacts because she was functionally their employee by virtue of their membership in the joint venture.  The Court addresses whether a joint venture exists, as well as the argument for personal jurisdiction, below.

---

[1] For the purpose of resolving this Motion to Dismiss, the Court will accept Plaintiff's naming of the Defendant Company.

## II.      LEGAL STANDARD

When personal jurisdiction is contested, the plaintiff has the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)). When the Court assesses its jurisdiction without an evidentiary hearing, the prima facie standard applies. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002). Under the standard, the plaintiff should "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins Franchising LLC v. 4 Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). The Court reviews the pleadings, supplemental filings in the record, and undisputed facts provided by the defendant, "giving credence to plaintiff's version of genuinely contested facts." Id.

While the plaintiff's burden of proof is "light," reliance on "mere allegations" alone will not suffice. Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) (citing Daynard, 290 F.3d at 51). Instead, a plaintiff "must point to specific facts in the record that support" their claims. Id. The Court "'must accept the plaintiff's (properly documented) evidentiary proffers as true . . .' irrespective of whether the defendant disputes them" for the purposes of the motion. Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)). The Court is to view these facts in the light most favorable to the plaintiff's jurisdictional claim. See Mass. Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The defendant may also offer evidence, but the evidentiary proffers of the defendant "become part of the mix only to the extent that they are uncontradicted." Adelson, 510 F.3d at 48 (citing Mass. Sch. of Law, 142 F.3d at 34); see

Baskin-Robbins, 825 F.3d at 34 ("We may, of course, take into account undisputed facts put

forth by the defendant.").

## III.    DISCUSSION

### A.  Joint Venture Theory

Since McCloskey alleges the Court can exercise personal jurisdiction over the

Defendants under a joint venture theory, the Court must first determine whether a joint venture

exists before proceeding to the jurisdiction analysis.  The joint venture test is used to impose

liability on an entity which is not a direct legal employer but sufficient facets of an employer-

employee relationship exist.  See Engelhardt v. S.P. Richards Co., Inc., 472 F.3d 1, 4 n. 2 (1st

Cir. 2006) ("The [joint venture test] looks to whether there are sufficient indicia of an

employer/employee relationship to justify imposing liability on the plaintiff's non-legal

employer.").  This theory is also captured by the Uniform Partnership Act, which is codified by

Massachusetts:

> When a person . . . represents himself, or consents to another
> representing him to any one, as a partner . . . he is liable to any such
> person to whom such representation has been made, who has, on the
> faith of such representation, given credit to the actual or apparent
> partnership, and if he has made such representation or consented to
> its being made in a public manner he is liable to such person,
> whether the representation has or has not been made or
> communicated to such person so giving credit by or with the
> knowledge of the apparent partner making the representation or
> consenting to its being made.

Mass. Gen. Laws Ann. ch. 108A, § 16(1) (West 2024); see also Daynard, 290 F.3d at 56.  The

First Circuit reasoned that, for a plaintiff to make a jurisdictional showing under a joint venture

theory, what matters is not whether a joint venture *actually* exists but rather whether the plaintiff

and public *reasonably believed* it to exist.  See id.  Construing the facts in the light most

favorable to the Plaintiff, this Court determines that the corporate Defendants held themselves

out to be in a joint venture.

Both TechGenies and Hexa, through their agents, were involved in hiring McCloskey for

Hiring Cubed.  Hexa's agent, Hamden, signed McCloskey's employment agreement with Hiring

Cubed.  [Dkt. 1 at 8].  TechGenie's agent, Al-Amine, signed McCloskey's confidentiality and

non-compete agreement.  [Dkt. 13-1 at 29].  Both individuals met with McCloskey in her

Massachusetts home to discuss and plan the new company.  [Dkt. 13 at 3].  Crucially, the

confidentiality agreement that McCloskey and Al-Amine signed was not just between

McCloskey and Hiring Cubed—it was with Hiring Cubed "and all affiliated companies."  [Dkt.

13-1 at 24].  Hexa and TechGenies were also part of a press release that stated they collaborated

with PHR to launch Hiring Cubed.  [Dkt. 1 at 9-10].  PHR, TechGenies, and Hexa sent emails to

McCloskey discussing "new joint venture assets."  [Dkt. 13-1 at 7-8].

Plaintiff also offers allegations that, taken as true, suggest TechGenies had a significant

role in determining McCloskey's salary.  McCloskey negotiated her compensation with

TechGenies CEO Al-Amine shortly before Hiring Cubed was launched.  [Dkt. 1 at 8].  When

Hiring Cubed struggled to make revenue, TechGenies, at the request of Troiano, was the entity

that ultimately deferred McCloskey's salary.  [Id. at 10].  The fact that TechGenies was the entity

directly paying McCloskey strongly suggests TechGenies played a substantial role in the method

of payment.  TechGenies also appears to have maintained employment records.  A TechGenies

employee—Ms. Jia Situ—was McCloskey's supervisor on a management employee form that

was kept for internal records.  [Dkt. 13-1 at 37].  Hexa, through Hamden's signature, is also

represented on the employment agreement form.  [Dkt. 1 at 8].

Considering the totality of the facts, the evidence weighs in favor of finding that

McCloskey reasonably believed a joint venture existed with PHR.  Since the Court has accepted

this theory, it now proceeds to its jurisdictional analysis.

### B.  Personal Jurisdiction

In federal question cases, it is well-established that the Fifth Amendment requires

defendants have "minimum contacts" with the United States as a whole rather than the forum

state.  Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991).[2]  Ultimately,

"the personal jurisdiction analysis [for federal question cases] is the same regardless of whether

the Court construes this case as arising out of federal question or diversity jurisdiction."

Ramirez-Fort v. Marshall, 456 F. Supp. 3d 361, 368 (D.P.R. 2020), aff'd sub nom. Ramirez-Fort

v. Med. Univ. of S.C., No. 20-1563, 2023 WL 6784338 (1st Cir. July 12, 2023).  As said by

another court, "The question to be answered, then, is whether exercising personal jurisdiction

over [the Defendant] with respect to these claims is consistent with federal constitutional due

---

[2] The jurisdictional framework in federal question cases requires an inquiry into whether service was proper, which itself turns on whether the "service of summons on the defendant[]" was authorized by federal law.  Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987); see United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992) ([I]n federal question cases . . . the basis for service of process returnable to a particular court must be grounded within a federal statute or Civil Rule.").  Here, Defendants were served process in accordance with Massachusetts law, making this Court's exercise of personal jurisdiction turn on whether such service was lawful.  See Fed. R. Civ. Pro. 4(e)(1).  Because the service inquiry requires that the federal court's exercise of personal jurisdiction comport with due process, the personal jurisdiction inquiry boils down to whether personal jurisdiction comports with due process.  See Waters, 23 F.4th at 94 ("To be sure, Rule 4(k)(1)(A) does make the due process standard of the Fourteenth Amendment applicable to federal-question claims in federal court when a plaintiff relies on a state long-arm statute for service of the summons.").

The Court notes that cases such as this, where state law claims are properly in federal court not because of diversity jurisdiction but because the federal and state law claims "form part of the same case or controversy under Article III[,]" 28 U.S.C. § 1367(a), particularly thorny issues of personal jurisdiction are present.  See Nahigian v. Leonard, 233 F. Supp. 2d 151, 159 (D. Mass. 2002).  Both because "[t]he First Circuit has been silent on this issue[,]" and the ultimate outcome of Defendants' personal jurisdiction challenge is unaffected by resolving such issues, this Court does not seek to conclusively resolve "whether the fact that this action was not initially filed in state court, but rather removed to federal court, makes a difference[.]"  Id.

process." Sacks v. Univ. of Minnesota, 600 F. Supp. 3d 915, 935 (D. Minn. 2022).  Since the

parties examine the Court's exercise of personal jurisdiction under both the Massachusetts long-

arm statute and federal due process, the Court will take the opportunity to discuss both but notes

that a due process inquiry would have sufficed.

### a.    Massachusetts Long-Arm Statute

The Massachusetts long-arm statute lists several circumstances that give rise to personal

jurisdiction, including "from the person's . . . transacting any business in this [C]ommonwealth."

Mass. Gen. Laws Ann. ch. 223A, § 3(a) (West 2024).  Essentially, the Defendants must have

transacted business in the Commonwealth and McCloskey's claims must have arisen from that

business.  Baskin-Robbins, 825 F.3d at 34 n.3 (quoting Tatro v. Manor Care, Inc., 625 N.E.2d

549, 551 (Mass. 1994)).  Courts in the First Circuit have regularly construed this language

broadly and thus this Court looks to whether the defendant "attempted to participate in the

[C]ommonwealth's economic life." Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir.

2015) (quotation omitted); see Hahn v. Vermont Law School, 698 F.2d 48, 50 (1st Cir. 1983)

(finding that "transacting any business" is not strictly limited to commercial activity).  While "an

isolated (or minor) transaction" may be insufficient, "purposeful solicitation[,]" by a defendant

or its agent, will suffice. Tatro, 625 N.E.2d at 551-552.

Plaintiff alleges that the statutory requirement is satisfied by two prongs of the

Massachusetts long-arm statute.  First, McCloskey submits that Mass. Gen. Laws ch. 223A, §

3(a) satisfies the requirement by virtue of its language allowing a court to exercise jurisdiction

over a party who "transact[s] any business in this commonwealth."  [Dkt. 13 at 1-2].

Alternatively, McCloskey submits that Mass. Gen. Laws ch. 223A, § 3(c), granting jurisdiction

over a party who "caus[es] tortious injury by an act or omission in this commonwealth," satisfies

the requirement. [Dkt. 13 at 1-2]. Regarding the "transacting business" part of the statute,

Defendants contend that this is not met because their only relevant "business" is ownership of

Hiring Cubed stock. [Dkt. 9 at 4].

While true that mere ownership of stock is not sufficient to establish personal

jurisdiction, Biopharma Capital, Ltd. v. Lydon, No. 01-1926, 2002 WL 31957013 at *4 (Dec. 2,

2002 Mass. Super. Ct.) (citing Johnson Creative Arts Inc. v. Wool Masters, Inc., 573 F. Supp.

1106, 1111 (D. Mass. 1983) aff'd 743 F.2d 947 (1st Cir. 1984)), this relationship is more than

mere stock ownership because TechGenies and Hexa were in a joint venture with PHR,

McCloskey's direct supervisor and employer. The "transacting any business" portion of the

statute should be construed broadly—such that employing a person in the state would fall within

a broad construction of this language. See Nova Biomedical Corp. v. Moller, 629 F.2d 190, 193

n.3 (1st Cir. 1980). Furthermore, the corporate Defendants jointly recruited McCloskey,

employed her, and advertised Hiring Cube in Massachusetts. Lastly, McCloskey's "claims arise

from [the] transaction under the 'but for' standard." Ouellette v. True Penny People, LLC, 352 F.

Supp. 3d 144, 152 (D. Mass. 2018). In other words, but for the Defendants' actions leading to

her termination, McCloskey would not have been injured in Massachusetts. See Nowak v. Tak

How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996) (citing Tatro, 625 N.E.2d at 554).

Accordingly, the Court finds that the exercise of personal jurisdiction over the Defendants is

proper under the long-arm statute.

### b. Due Process

As stated above, the personal jurisdiction inquiry rests on whether the exercise of

jurisdiction over the Defendants is consistent with federal constitutional due process. Thus, the

analysis must proceed.

The Due Process Clause requires that the out-of-state defendant over whom this Court is exercising jurisdiction over have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  Personal jurisdiction comes in two flavors: general and specific.  See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  A court can exercise general jurisdiction over a defendant whose "continuous and systematic activity" within the forum state, United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992), renders the defendant "essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 127 (2014).  Here, Plaintiff has not offered any allegations to support general jurisdiction. Thus, the Court need only examine whether the Court has specific jurisdiction.

In order for a court to exercise specific jurisdiction over a defendant, (1) the claim must "relate[] to or arise[] out of the defendant's contacts with the forum"; (2) the contacts must "constitute purposeful availment of the benefits and protections afforded by the forum's laws"; and (3) the exercise of jurisdiction must be reasonable.  Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).  Satisfying all three prongs is necessary to establish specific personal jurisdiction.  See Motus, LLC v. Cardata Consultants, Inc., 23 F.4th 115, 122 (1st Cir. 2022).  Courts give more weight to the "purposeful availment" prong.  See Frawley v. Nexstar Media Grp., Inc., No. 23-cv-10384, 2023 WL 6065768, at *5 (D. Mass. Sept. 18, 2023).  This Court discusses each prong in turn.

### a.  Relatedness

To satisfy relatedness, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." Foster-Miller, 46 F.3d at 144 (internal citation omitted).  This "relaxed" prong only requires Plaintiff to show that the claim has a demonstrable "nexus" to contacts in the forum state. Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc., 56 F. Supp. 2d 134, 138 (D. Mass. 1999) (quoting Ticketmaster–New York v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994)).

Here, Plaintiff's claims arise out of Defendants' contacts with Massachusetts by virtue of their membership in the joint venture.  This is especially the case where the "contract defendants procured [was] with a Massachusetts resident to be performed by the resident primarily from Massachusetts." Cossart, 804 F.3d at 20.  Furthermore, TechGenies' and Hexa's contact in Massachusetts is McCloskey in her role as their employee.  McCloskey's cause of action is her employment, jointly with TechGenies and Hexa.  The finding of a joint venture makes relatedness facially apparent.  See id.; see also Adelson, 510 F.3d at 49-50 (finding relatedness satisfied because the contract was negotiated and entered into in the forum state).  Thus, the Court can proceed to the second prong.

### b.  Purposeful Availment

Due process requires that a defendant's in-state contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Daynard, 290 F.3d at 61 (internal citation omitted).  This is to ensure "that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir.

1995) (internal citation omitted).  A showing of both voluntariness and foreseeability is required.

Id.  The nonresident defendant's contacts with residents in the forum state "must be voluntary

and not based on the unilateral actions of another party," and it "must be such that [the

nonresident defendant] could reasonably anticipate being haled into court there." Adelson, 510

F.3d at 50 (internal citation and quotations omitted).  This does not mean the defendant must

explicitly consent to jurisdiction, and there are no "magic words" that the Court must look for.

Mallory v. Norfolk S. Ry. Co., 600 U.S. 122, 136 n. 5 (2023).  Voluntariness and foreseeability

are the hallmark features of purposeful availment.

Voluntariness turns on whether the contacts are "voluntary and not based on the

unilateral actions of another party."  Vapotherm, 38 F.4th at 261-62 (quoting Adelson, 510 F.3d

at 50).  Here, TechGenies and Hexa did not just voluntarily enter into an employment agreement

with McCloskey—they negotiated the terms of it.  They knew she would be working primarily

from Massachusetts and still elected to actively participate in governing McCloskey's

employment.  [Dkt. 1 at 9].  They travelled to Massachusetts to negotiate with her.  [Dkt. 13-1 at

2].  They signed agreements with McCloskey.  [Id. at 24-29].  They emailed and called

McCloskey on several occasions.  [Id. at 13-22].  These facts, taken as true, indicate that the

Defendants actively participated in McCloskey's employment.  Because mutually agreed-to

business contracts satisfy the voluntariness requirement, the Court can proceed to foreseeability.

See Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008) (offering employment to known

Massachusetts resident makes forum contacts "plainly voluntary"); C.W. Downer & Co. v.

Bioriginal Food & Sci. Corp., 771 F.3d 59, 66-67 (1st Cir. 2014) (holding a contractual

relationship with a Massachusetts bank for work performed in Massachusetts was voluntary

contact with the forum).

Foreseeability looks at whether a defendant's contacts in the forum state provide notice to "reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see Cossart, 804 F.3d at 21-22 (finding it foreseeable that defendant could be brought into Massachusetts court where it contracted with an employee based in Massachusetts to perform services in Massachusetts). Here, McCloskey was contracted to work in Massachusetts on behalf of her joint employers. The Defendants knew that McCloskey would work from Massachusetts because that is where McCloskey lived; it is where they met with her to negotiate the terms of their agreement; and it is where she worked before (and after) joining Hiring Cubed. [See Dkt. 13-1 at 2-3]. Given these facts, the Defendants should have reasonably anticipated that they would be haled into Massachusetts courts to resolve potential claims against them. With both voluntariness and foreseeability present, Plaintiff has made a sufficient showing of purposeful availment.

### c. Reasonableness

Exercising jurisdiction over TechGenies and Hexa must comport with traditional notions of fair play and substantial justice. In other words, it must be reasonable. To determine whether specific personal jurisdiction would be reasonable, courts in the First Circuit consider the five "Gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

United Elec., 960 F.2d at 1088.

These factors play an important role if the first two prongs are weak. See Adelson, 510 F.3d at 51. Here the Defendants are businesses, so the inquiry shifts to the burden their

representatives will undertake.  The representatives will undeniably bear a burden to appear

because they will likely have to travel from Richardson, Texas.  [Dkt. 9 at 1].  However,

"modern travel 'creates no especially ponderous burden for business travelers,'" thus for "this

type of burden to affect the analysis, the defendant must show that it is 'special or unusual.'"

C.W. Downer & Co., 771 F.3d at 70 (first quoting Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994)

and then quoting BlueTarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 83 (1st Cir. 2013)).  The

Defendants cannot meet the "special or unusual" burden, as they were willing to make the

Massachusetts trip when they visited McCloskey to discuss her employment with Hiring Cube.

[Dkt. 13-1 at 2].  Travel that they have previously been willing to make does not appear to be a

prohibitive burden, let alone a special or unusual one.

Next, the forum state must have an interest in adjudicating the dispute.  Massachusetts

has a significant interest in holding a convenient forum for its citizens when their commercial

contracts are allegedly breached by out of state parties.  C.W. Downer & Co., 771 F.3d at 70.

Massachusetts also has an interest in making sure that its remote workers enjoy the full benefits

of state employment laws.  Thus, this factor weighs heavily in favor of finding jurisdiction

reasonable.  The plaintiff must also have an interest in obtaining convenient and effective relief.

McCloskey alleges significant damages, including COBRA violations that have left her daughter

without insurance required to pay for her treatments for Crohn's Disease.  [Dkt. 1 at 13, 18-19].

These allegations are sufficient to find an interest in convenient and effective relief.

The final two factors, the judicial system's interest in obtaining the most effective

resolution of the controversy and the common interests of all sovereigns in promoting

substantive social policies, do not substantially tip the scales in either direction.  Thus the

"Gestalt" factors favor a finding that jurisdiction is proper in Massachusetts.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss [Dkt. 8] is **DENIED**.

As a result, Plaintiff's Cross-motion for Jurisdictional Discovery [Dkt. 13] is **DENIED** as moot**.**

    **SO ORDERED.**

Dated: April 25, 2025                          /s/ Angel Kelley
                                                  Hon. Angel Kelley
                                                    United States District Judge